**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ABNER AMILTON LOPEZ-LOPEZ,** *Petitioner,* | : | **CIVIL ACTION** |
| v. | : | **No. 26-cv-7618** |
| **JAMAL L. JAMISON, et al.,** *Respondents.* | : | |

**MEMORANDUM**

**KENNEY, J.** **OCTOBER 16, 2026**

Before the Court is Petitioner Abner Amilton Lopez-Lopez's Petition for Writ of Habeas Corpus (the "Petition") (ECF No. 1). Petitioner seeks immediate release from detention pursuant to 28 U.S.C. § 2241. *See* ECF No. 1 at 3. Respondents oppose any relief. *See* ECF No. 5. For the reasons set forth below, the Court will **GRANT** the Petition (ECF No. 1), and order Respondents to immediately release Petitioner from detention.

## I. BACKGROUND

Petitioner is a citizen of Guatemala who entered the United States without inspection about twenty years ago at the age of fifteen years old. ECF No. 1 ¶¶ 1–2, 8. He has been residing in Philadelphia, Pennsylvania, *see id.* ¶ 8, and Respondents report that "Petitioner does not have a criminal background." ECF No. 5 at 6.

On or about September 30, 2026, officers of U.S. Immigration and Customs Enforcement ("ICE") arrested and detained Petitioner pursuant to 8 U.S.C. § 1226(a). ECF No. 1 ¶ 3; *see also* ECF No. 5 at 3, 6–7. According to the deportation officer's arrest narrative in Petitioner's Form I-213, ICE officers were "conduct[ing] a fugitive enforcement operation to locate" an unnamed "ICE At-Large Target at 52 Hampden Rd., Upper Darby, Pennsylvania." ECF No. 5-2 at 2. Around 10:00 a.m. on September 30, 2026, officers "observed a male matching the physical

description of a separate ICE target exit that target's last known address at 40 Copley Rd., Upper Darby, Pennsylvania." *Id.* Beyond the fact that the individual was a male, no other identifying features of either purported target are described. *Id.* Officers tried "to encounter the male while he was walking[,]" but before they could make contact with him, he "appeared to recognize the officers' presence and fled the immediate area." *Id.*

While officers were searching for the male that fled, "officers observed a male believed to be the same individual running across Chestnut Street toward Glendale Road." *Id.* According to officers, that "male appeared to be breathing heavily and was looking around in a manner suggesting he was attempting to evade someone or something." *Id.* The officers then "encountered the male near the intersection of Glendale Road and Samson Street." *Id.*[1] Officers proceeded to "conduct[] a brief field interview and identified" the individual as Petitioner, Mr. Lopez-Lopez. *Id.* Over the course of the interview, "officers determined that [Petitioner] was not the ICE target who had previously fled from officers." *Id.* According to the deportation officer, Petitioner "freely claimed that he is a citizen of Guatemala and is unlawfully present in the United States." *Id.* "An ICE supervisor was on scene, issued an I-200, and authorized" Petitioner's arrest. *Id.* Petitioner "was placed in hand restraints, searched, placed in a service vehicle, and transported to the Philadelphia Field Office for processing." *Id.*

Once back at the Field Office, Petitioner was then "served" with another "ICE Arrest Warrant and a Notice to Appear in Immigration Court[,]" and was "detained without bond." *Id.* at 3. There are two Form I-200 Warrants dated September 30, 2026 in the record before the Court—a partly handwritten version and an electronic version, neither of which are time-stamped.

[1] The deportation officer's Declaration states instead that Petitioner "was encountered on Chestnut Street." ECF No. 5-4 ¶ 2.

*See* ECF No. 5-3 at 1–2. The Warrants differ in a material respect: on the handwritten Warrant, the immigration officer checked a box which states that the determination of probable cause regarding removability was "based upon . . . the pendency of ongoing removal proceedings against the subject[,]" among other reasons; by contrast, the electronic version does not have that particular box checked. *Id.*

After Petitioner was detained, the Petition followed. *See* ECF No. 1. In his Petition, Petitioner challenges the legality of his detention and asserts claims for relief pursuant to the Due Process Clause of the Fifth Amendment, the Immigration and Nationality Act ("INA"), certain bond regulations, and the Administrative Procedure Act ("APA"). *Id.* ¶¶ 24–42. Respondents filed a Response Opposing the Petition for Habeas Corpus Writ on October 9, 2026. *See* ECF No. 5. The Petition is before the Court.

## II. <u>LEGAL STANDARD</u>

A federal district court can grant habeas relief when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Habeas is at its core a remedy for unlawful executive detention[,]" *Munaf v. Geren*, 553 U.S. 674, 693 (2008), and is "regularly invoked on behalf of noncitizens, particularly in the immigration context." *I.N.S. v. St. Cyr*, 533 U.S. 289, 305 (2001), *superseded by statute on other grounds*. It is Petitioner's burden to demonstrate that he is being detained in violation of the Constitution or federal law. *See Walker v. Johnston*, 312 U.S. 275, 286–87 (1941). In addition, the Fifth Amendment of the United States Constitution entitles noncitizens to due process of law in immigration and deportation proceedings. *See Serrano-Alberto v. Att'y Gen. U.S.*, 859 F.3d 208, 211 (3d Cir. 2017) ("The Fifth Amendment protects the liberty of all persons within our borders, including aliens in immigration

proceedings who are entitled to due process of law—that is, a meaningful opportunity to be heard—before being deported.”).

## III. DISCUSSION

### A. Administrative Exhaustion

Before seeking judicial relief, habeas petitioners “are ordinarily required to exhaust their administrative remedies.” *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (collecting cases); *see also Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000) (“Although there is no statutory exhaustion requirement attached to § 2241, we have consistently applied an exhaustion requirement to claims brought under § 2241.” (collecting cases)). However, exhaustion can be excused in circumstances where (1) exhaustion “would be futile[;]” (2) “the actions of the agency clearly and unambiguously violate statutory or constitutional rights[;]” or (3) “if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury.” *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988). “[T]he exhaustion doctrine is not supposed to preclude judicial relief[.]” *Id.*

Under the circumstances of this particular case, exhaustion “would be futile” and the actions of ICE “clearly and unambiguously” violated Petitioner’s statutory rights and implicate constitutional concerns. *Id.* As relevant here, courts have found that “[a] later bond hearing does not necessarily cure the alleged constitutional violation that preceded it.” *Dos Reis v. McShane*, No. 26-cv-3775, 2026 WL 1746649, at *3 (E.D. Pa. June 17, 2026) (collecting cases). As discussed below, *see infra* at 7–10, Respondents did not detain Petitioner pursuant to a valid Form I-200 Warrant, so requiring a bond hearing at this posture would be futile in remedying Petitioner’s current unlawful and invalid detention. *See Dos Reis*, 2026 WL 1746649, at *3; *see also Melendez-Guzman v. Jamison*, No. 26-cv-7556, 2026 WL 2983704, at *3 (E.D. Pa. Oct. 5, 2026) (“Petitioner

alleges that he is *currently* being deprived of liberty unlawfully, so administrative processes such as a bond hearing that may become available in the future would be futile in remedying Petitioner's alleged present and ongoing constitutional deprivation."). Furthermore, requiring the Court to defer until a bond hearing is held and an appeal has been heard before the Board of Immigration Appeals would simply delay adjudication of a "clear[] and unambiguous[]" violation of Petitioner's rights. *Lyons*, 840 F.2d at 205; *see also Almonte v. Genalo*, No. 26-cv-3633, 2026 WL 2983349, at *10 (E.D.N.Y. Oct. 5, 2026) ("It is well-settled that [p]etitioner is not required to exhaust a process that was deficient from the outset" and where "a petitioner has raised a substantial constitutional question" (internal quotations and citations omitted)). Accordingly, the Court will excuse exhaustion here.

**B. Lawfulness of Petitioner's Arrest**

"As a general rule, it is not a crime for a removable [noncitizen] to remain present in the United States[,]" so officers may not arrest an individual "based on nothing more than possible removability[.]" *Arizona v. United States*, 567 U.S. 387, 407 (2012). In fact, "[i]f the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent." *Id.*[2] Accordingly, the "federal statutory structure instructs when it is appropriate to arrest [a noncitizen] during the removal process." *Id.*

Specifically, Section 236(a) of the INA provides that "*[o]n a warrant* issued by the Attorney General, [a noncitizen] may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added); *see also*

[2] If an officer suspects that a noncitizen is "removable, a federal official issues an administrative document called a 'Notice to Appear'" ("NTA"). *Arizona*, 567 U.S. at 407 (first citing 8 U.S.C. § 1229(a); then citing 8 C.F.R. § 239.1(a)). The NTA "does not authorize an arrest[;]" rather, it provides the noncitizen with information about the removal "proceedings, including the time and date of the removal hearing." *Id.* (citing 8 U.S.C. § 1229(a)(1)).

*Juarez v. Mullin*, No. 26-cv-7008, 2026 WL 2981947, at *2 (E.D. Pa. Oct. 5, 2026) (same). "The language of this provision is clear: Section 236(a) 'requires a warrant for arrest'" and detention. *Tabora-Brizuela v. Mullin*, No. 26-cv-7010, 2026 WL 2908095, at *2 (E.D. Pa. Sept. 28, 2026) (quoting *Hernandez v. Blanche*, No. 26-cv-6195, 2026 WL 2569475, at *3 (E.D. Pa. Aug. 31, 2026) (collecting cases)); *see also Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) (explaining that Section 1226(a) "authorizes detention [under that section] only '[o]n a warrant issued' by the Attorney General leading to the alien's arrest" (quoting 8 U.S.C. § 1226(a))); *Sagbay v. Jamison*, No. 26-cv-7265, 2026 WL 2875765, at *5 (E.D. Pa. Sept. 24, 2026) ("Section 1226(a) is not even triggered unless an arrest warrant is issued. . . . If the alien has not been arrested on a warrant, then the subsequent provisions giving the Attorney General discretion to detain or release the arrested alien are likewise not triggered." (internal quotations and citation omitted)). A Form I-200 is the administrative warrant that the U.S. Department of Homeland Security ("DHS") and ICE employ when arresting noncitizens under Section 1226(a). Importantly, the Form I-200 authorizes a noncitizen's arrest if it is issued "*[a]t the time of issuance of the notice to appear, or at any time thereafter* and up to the time removal proceedings are completed[.]" 8 C.F.R. § 236.1(b)(1) (emphasis added).

When these provisions are taken together, they indicate that "DHS may arrest a non-citizen using a Form I-200 only if the Form I-200 issues at the same time or after DHS issues an NTA." *Vladimir G. v. Easterwood*, No. 26-cv-2971, 2026 WL 1786418, at *2 (D. Minn. June 22, 2026) (citations omitted); *see also Islamuddin A. v. Blanche*, No. 26-cv-3340, 2026 WL 2546280, at *3 (D. Minn. Aug. 28, 2026) ("To be valid, then, a Form I-200 warrant must issue at the same time or after the Department of Homeland Security issues an NTA." (internal quotations and citations omitted)). This is because "[a] notice to appear" is a "case-initiating document"—"like an

indictment in a criminal case [or] a complaint in a civil case"—and "serves as the basis for commencing a grave legal proceeding" against a noncitizen. *Niz-Chavez v. Garland*, 593 U.S. 155, 163–64 (2021) (citation omitted); *see also Loaeza v. Bausch*, No. 26-cv-00945, --- F. Supp. 3d ----, 2026 WL 2150155, at *1 (W.D.N.Y. July 27, 2026) ("The Notice to Appear ('NTA') is the immigration version of a charging instrument and begins the removal process." (internal quotations and citation omitted)); 8 U.S.C. § 1229(a)(1) (explaining that noncitizens "shall" be provided with "written notice" of the "removal proceedings[,]" which is "referred to as a 'notice to appear'").

Here, Respondents have failed to properly follow this sequence. Based on the record before the Court, ICE officers issued a handwritten Form I-200 Warrant at the scene of Petitioner's arrest after interviewing him. *See* ECF No. 5-2 at 2. However, at that time, Petitioner did not have an existing NTA and they did not issue him one contemporaneously with his arrest. Instead, ICE officers only generated and served Petitioner with an NTA *after* he had already been arrested and detained at its Field Office. *Id.* at 3.[3] District courts across the country have concluded that it is

[3] Respondents are not clear in their Response as to the timeline of the events, so the Court focuses its attention on the documents prepared by ICE officers. Respondents state that ICE "prepared a handwritten I-200 . . . and served Petitioner before his arrest on September 30, 2026." ECF No. 5 at 6. Respondents then state that, "[a]t that time, ICE executed and served Petitioner with a Form I-286 (Notice of Custody Determination), advising that he was being detained for the remainder of his removal proceedings." *Id.* at 6–7. That representation is belied by the record.

As reflected in the arrest narrative, ICE officers encountered Petitioner at 10:00 a.m. *See* ECF No. 5-2 at 2. They "conducted a brief field interview" before arresting him, and there is *no* indication that he was served with any documentation at the scene beyond the Form I-200 Warrant. *Id.*; *see also* ECF No. 5-4 ¶ 4 ("Supervisory Deportation Officer Damon Brown was present at the encounter, authorized the arrest and issued a hand-written I 200 to Mr. Lopez-Lopez and advised him that he was being arrested."). Petitioner's signed Notice of Custody Determination is time-stamped at 12:48 p.m. on September 30, 2026—over two hours after the encounter. *See* ECF No. 5-1 at 1. The Notice of Custody Determination is also electronically filled out and has a redacted "A-File Number[,]" which further suggests that it was completed at the Field Office. *Id.* By contrast, the handwritten Form I-200 contains only a "TBD" for "File No." *See* ECF No. 5-3 at 2.

unlawful for ICE officers to arrest and detain a noncitizen on a Form I-200 warrant and *subsequently* generate an NTA; warrants issued under those circumstances are deemed invalid. *See, e.g.*, *Loaeza*, 2026 WL 2150155, at *1 ("[W]ithout a valid NTA in place, removal proceedings are not pending, and [r]espondents have no authority to make an arrest or effectuate detention pursuant to § 1226(a)."); *Martinez-Salamanca v. Baltazar*, No. 26-cv-2410, 2026 WL 2083209, at *3 (D. Colo. July 20, 2026) (finding that a "Form I-200 warrant was invalid" where it was issued before an NTA was issued, so petitioner was arrested "in contravention of 8 U.S.C. § 1226(a)"); *Vladimir G.*, 2026 WL 1786418, at *3 (concluding that a "Form I-200 warrant was plainly invalid" when issued before an NTA was generated and thus finding that petitioner's "arrest was effected without a required warrant"); *Aguilar Torres v. Hardin*, No. 26-cv-1480, 2026 WL 1353242, at *1 (M.D. Fla. May 15, 2026) ("I-200 warrants issued without a contemporaneous or previously issued notice to appear are invalid."); *Yeleshev v. Larocco*, No. 26-cv-2294, 2026 WL 1353806, at *4 (E.D.N.Y. May 14, 2026) ("The warrant's *execution* cannot precede the NTA—that is, ICE cannot arrest the individual pursuant to an I-200 before an NTA has issued. But here, the arrest was effectuated before the NTA was created. That flaw renders the warrant and the arrest invalid."). Today, this Court joins in those holdings and finds that the handwritten Form I-200 Warrant that was issued at the scene of Petitioner's arrest before he was in removal proceedings is invalid. Accordingly, Respondents arrested Petitioner without the statutory authority to do so and unlawfully detained him in violation of the INA.

Furthermore, the handwritten Form I-200 Warrant contains false information. *See* ECF No. 5-3 at 2. At least three out of four boxes that purportedly support the immigration officer's

Accordingly, the record does not support Respondents' contention that Petitioner was provided with a Form I-286 at the same time as his arrest.

determination of "probable cause" for Petitioner's arrest appear to have been erroneously checked when the handwritten Form I-200 Warrant was issued. *See id.*[4] The immigration officer states that he "determined that there is probable cause to believe that [Petitioner] is removable from the United States . . . based upon:" (1) "the execution of a charging document to initiate removal proceedings against the subject;" (2) "the pendency of ongoing removal proceedings against the subject;" (3) "biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, . . . that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law;" and (4) "statements made voluntarily by the subject to an immigration officer and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." *Id.*

With respect to the first two determinations, the record reflects that Petitioner did not have an existing "charging document" when the handwritten Form I-200 Warrant was issued, nor were there any "ongoing removal proceedings" involving Petitioner. *Id.* To the contrary, as discussed above, Petitioner was not issued an NTA until after he had already been arrested and detained by ICE officers on September 30, 2026. *See* ECF No. 5-2 at 3 (noting that Petitioner "was served an ICE Arrest Warrant and a Notice to Appear in Immigration Court" after he was detained); *see also* ECF No. 5 at 6 (stating that Petitioner "entered the United States without inspection on an unknown date and place, approximately twenty years ago"); ECF No. 1 ¶ 2 (explaining that Petitioner "did not encounter" Government agents when he originally crossed the border at the age of fifteen).

[4] The Court also notes that the immigration officer handwrote information into fillable spaces on the Form I-200 Warrant, but the boxes that indicate the alleged basis for probable cause to arrest Petitioner appear to have been checked electronically, which suggests that they were already predetermined before ICE officers ever approached Petitioner. ECF No. 5-3 at 2.

The Court presumes this factual error is in part why ICE officers subsequently issued a second, electronic version of the Form I-200 Warrant that, notably, omits a check for the box associated with "the pendency of ongoing removal proceedings against the subject." ECF No. 5-3 at 1.

With respect to the third determination, the arrest narrative does not reflect that ICE officers conducted any "biometric confirmation of [Petitioner's] identity" or "a records check of federal databases" at the scene of his arrest. *Id.* at 2. Instead, to the extent that either of those steps were completed, they appear to have been done only after Petitioner was detained and processed at ICE's Field Office. *See* ECF No. 5-2 at 2–3. Moreover, the records that ICE officers checked returned "[n]egative result[s]" for Petitioner. *See id.* at 2. As at least one other court has commented, it is "undeniably false" to "represent[] as true in the warrant[] that 'biometric confirmation [and] records check of federal databases *affirmatively* indicate' that the petitioner lacked immigration status" when those records checks return negative results. *Almonte*, 2026 WL 2983349, at *10; *see also id.* at *9 ("The claim that database queries checks could 'positively identify' petitioner appears spurious as, without any immigration record, petitioner would not appear in any ICE database from which he could be positively identified."). As in *Almonte*, the deportation officer thus issued an arrest warrant that contains false information and inaccurately "stat[es] that [P]etitioner's information was part of the system when it was not and indicat[es] that he could be biometrically identified even though they had not collected the information to make a positive match" when they arrested him. *Id.* at *10.

For these reasons, the Court finds that the handwritten Form I-200 Warrant that Respondents used to arrest Petitioner is invalid, which renders his arrest and detention invalid. *See Yeleshev*, 2026 WL 1353806, at *4 ("That flaw [in the timing of the issuance of the NTA] renders the warrant and the arrest invalid."); *Loaeza*, 2026 WL 2150155, at *2 ("Because removal

proceedings were not pending against [the petitioner] when he was arrested on May 8 under the purported authority of § 1226(a), [r]espondents had no statutory authority to make the arrest or to detain him under that provision."); *Vladimir G.*, 2026 WL 1786418, at *3 (finding that a petitioner was arrested "pursuant to an invalid warrant[,]" which rendered his arrest "unlawful"). Accordingly, Petitioner is being unlawfully detained in violation of the INA, which is "grounds for habeas relief." *Tabora-Brizuela*, 2026 WL 2908095, at *3.

Moreover, Respondents cannot fall back on their authority to detain a noncitizen without a warrant under 8 U.S.C. § 1357(a)(2). Section 1357(a)(2) gives ICE "limited authority to make warrantless arrests." *Id.* at *2 (first citing 8 U.S.C. § 1357(a)(2); then citing *Arizona*, 567 U.S. at 408). An officer is authorized to arrest a noncitizen "without [a] warrant" if the officer "has reason to believe that the [noncitizen] so arrested is in the United States in violation of" certain immigration "law[s] or regulation[s] and is likely to escape before a warrant can be obtained for his arrest[.]" 8 U.S.C. § 1357(a)(2); *see also* 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained."). Courts have interpreted the "reason to believe" language "as equivalent to 'probable cause.'" *Tabora-Brizuela*, 2026 WL 2908095, at *2 (quoting *Lee v. Immigr. & Naturalization Serv.*, 590 F.2d 497, 500 (3d Cir. 1979)). The analysis of probable cause "turns on what the arresting officer knew at the time they took the individual into custody." *Id.* (citing *Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1231 (D. Colo. 2025)).

Here, there is no indication in the record that ICE officers had "reason to believe" that Petitioner was "likely to escape before a warrant [could] be obtained for his arrest[.]" 8 U.S.C. § 1357(a)(2). Indeed, "[d]uring the interview" of Petitioner at the scene of his arrest, ICE officers "determined that [Petitioner] was not the ICE target who had previously fled from officers." ECF

No. 5-2 at 2. Moreover, the fact that ICE officers issued a Form I-200 Warrant for Petitioner's arrest at the scene further confirms that they did not intend to proceed with a warrantless arrest pursuant to Section 1357(a)(2). *See* ECF No. 5-3 at 2. Section 1357(a)(2) thus does not provide a basis for Petitioner's arrest and detention either.

The Court notes that it is starting to see a troubling pattern of individuals being "mistakenly" identified as targets by ICE and investigated without reasonable suspicion merely for being in proximity to other unnamed, ambiguous targets. *Almonte*, 2026 WL 2983349, at *1; *see also id.* at *8 & n.7 ("ICE's narrative justifying arrests because of misidentification of the arrestee as a 'target' of an ICE operation has an inglorious history." (collecting cases)); *Alfaro v. Mullin*, 831 F. Supp. 3d 177, 180 n.6 (E.D.N.Y. 2026) (noting that "[t]his [misidentification] rationale has become so commonplace in cases involving ICE enforcement efforts that such testimony must be examined carefully" (collecting cases)); *cf. Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) (explaining that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search [or seize] that person"). Whether ICE officers intended to do so or not, their actions here are indicative of racial profiling of an individual who happened to be "breathing heavily" near a target. ECF No. 5-2 at 2. This Court has previously commented that Respondents are taking a "make-it-up-as-we-go" approach to immigration enforcement and are "leaving others to backfill whatever was missed after the action [has] already been taken." *Martinez v. Jamison*, No. 26-cv-00718, 2026 WL 700335, at *4 (E.D. Pa. Mar. 12, 2026). That statement continues to ring true here.

**C. Remedy**

Respondents have violated the INA, and Petitioner is, therefore, being held "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241(c)(3).[5] A federal court adjudicating a petition for a writ of habeas corpus is authorized to "dispose of the matter as law and justice require[,]" *see id.* § 2243, and has "equitable discretion to decide whether to issue the writ or to provide a remedy." *Edwards v. Vannoy*, 593 U.S. 255, 289 (2021) (Gorsuch, J., concurring). "The traditional function of the writ of habeas corpus is to secure release from unlawful executive detention." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 323 (3d Cir. 2020) (citing *Munaf*, 553 U.S. at 693). Immediate release from detention is warranted in this case as a remedy. *See Loaeza*, 2026 WL 2150155, at *2 (ordering immediate release from custody where a petitioner was unlawfully arrested under § 1226(a) on an invalid warrant); *Vladimir G.*, 2026 WL 1786418, at *3 (same) (collecting cases); *Yeleshev*, 2026 WL 1353806, at *8 (same).

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant the Petition (ECF No. 1), and order Respondents to immediately release Petitioner from detention and to certify their compliance with the Court's Order. An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**

[5] The Court need not address Petitioner's arguments that his arrest and detention violate the Due Process Clause, certain bond regulations, and the APA, as this Petition can be decided on other grounds.